**FILED & ENTERED**

MAY 31 2013

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** Fisher    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Donald Davies<br>Pamela Monroe Davies<br><br>Debtor(s). | CHAPTER 7<br><br>Case No.:  1:10-bk-23817-GM<br>Adv No:   1:11-ap-01070-GM<br><br>**MEMORANDUM OF OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION (Docket #23)**<br><br>Date: May 14, 2013<br>Time: 10:00 a.m.<br>Courtroom: 303 |
| Paul W Herbert<br><br>Plaintiff(s),<br>   v.<br><br>Donald Davies, Pamela Monroe Davies<br><br>Defendant(s). | |

**Background:**

Plaintiff Paul Herbert ("Plaintiff") commenced an adversary complaint against

debtors Donald and Pamela Davies ("Debtors") on 2/1/11, pursuant to 11 USC

-1-

§523(a)(2), (a)(4), and (a)(6) (and also sought a determination under §524 that, even if the debt is not declared nondischargeable as to one Debtor, the nondischargeability should extend to community property of Debtors).

After the Court granted Debtors' initial motion to dismiss with leave to amend as to §523(a)(2)(A), (a)(4) and (a)(6), but not as to §523(a)(2)(B) (*see* Docket # 7), Plaintiff filed a "First Amended Adversary Complaint" (the "Complaint"). Like Plaintiff's initial complaint, the Complaint refers to and incorporates a state court arbitration judgment awarded in favor of the Plaintiff and against the Debtors in the sum of $1,636,107 (the "Judgment"). The Judgment confirms an Amended Arbitration Award entered by Honorable Alan B. Haber (ret.) on 2/10/10 (the "Award"), which found that Debtor Donald Davies' conduct during a partnership dissolution violated the relevant provisions of the Uniform Partnership Act (Cal. Corp. Code §16701) and constituted breach of contract, conversion, intentional fraud and deceit, and fraudulent transfer. The Award also found that Pamela Davies' knowing receipt of partnership assets constituted conversion.

Debtors brought a second motion to dismiss, which the court granted as to §523(a)(2)(A) (with leave to amend) and §523(a)(4) as to Pamela's separate property (without leave to amend). The court otherwise denied this motion to dismiss. (See Docket #15). Plaintiff did not subsequently amend the Complaint, so only actions under §523(a)(4) as to Donald and §523(a)(6) as to Pamela and Donald remain to be litigated.

**Motion:** Plaintiff is seeking summary judgment against Debtors pursuant to §523(a)(2)(A), (a)(4) and (a)(6), as well as various provisions of §524. The only

evidence they submit in support of the MSJ are Debtors' Chapter 7 Petition and the Judgment and Award. Plaintiff argues that the Judgment and Award contain findings with issue preclusive effects sufficient to establish all elements required for non-dischargeability under §523(a)(2)(A), (a)(4) and (a)(6), as well as §524(a)(2)&(3) and (b)(1) &(2).

**Opposition:** Debtors argue that causes of action under §523(a)(2)(A) as to both Debtors and §523(a)(4) as to Pamela have been dismissed. As to the remaining causes of action, Debtors argue that the Court should exercise its discretion and refrain from giving any preclusive effect to the Judgment and Award, because (i) the language of the Award is vague, ambiguous and contradictory, (ii) the arbitrator appeared to be sick and/or very tired and (iii) there is no transcript of the arbitration and the Arbitrator was unable to prepare a settlement statement because he did not retain his notes. The opposition was accompanied by declarations from Mr. Davies and several others that paint a different picture of the events described in the Award and offer justifications for Mr. Davies' use of partnership property.

**Discussion:**

Debtors are correct that causes of action under §523(a)(2)(A) against both Debtors and under §523(a)(4) against to Pamela have been dismissed by this Court. Thus, only actions under (i) §523(a)(4) as to Donald and (ii) §523(a)(6) as to both Debtors remain.

Summary judgment is proper when the pleading, discovery, and affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled

-3-

to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the proceedings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Since the MSJ relies solely on the Judgment and Award, the issues are (i) whether the Judgment and Award are entitled to preclusive effect and (ii) if so, whether the Award and Judgment determined all necessary elements of nondischargeability under §523(a)(4) & (a)(6).

**Preclusive Effect**

California law (the law of the state in which the judgment was rendered) determines the preclusive effect of a state court judgment. Diruzza v. County of Tehama, 323 F.3d 1147, 1152 (9th Cir. 2003)(quoting Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)). Under California law, issue preclusion can be applied when: (1) the issue decided in the prior proceeding is identical to the issue sought to be relitigated in the subsequent proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the prior proceeding; (4) a final judgment on the merits was issued in the prior proceeding; and (5) the party against whom issue preclusion is sought was a party to the prior proceeding. Lucido v. Superior Court, 51 Cal. 3d 335, 341, 272 Cal. Rptr. 767, 795 P.2d 1223 (1990), *cert. denied*, 500 U.S. 920 (1991).

Confirmation of an arbitration award is a judicial proceeding entitled to the full

faith and credit it would receive under state law. Caldeira v. County of Kauai, 866 F.2d 1175, 1178 (9th Cir. 1989), *cert. denied*, 493 U.S. 817 (1989). Under California law, a judgment confirming an arbitration award has the same force and effect as a judgment in a civil action. Cal. Civ. Proc. Code § 1287.4. Thus, the Judgment and Award should be entitled preclusive effect if the requirements of Lucido are met (*see* Hasnain v. Chadd (In re Hasnain), 2012 Bankr. LEXIS 5286, 25-26 (B.A.P. 9th Cir. Nov. 9, 2012)) and if, as the California Supreme Court has additionally required, "such application comports with fairness and sound public policy" (Vandenberg v. Superior Court, 21 Cal. 4th 815, 829, 88 Cal. Rptr. 2d 366, 982 P.2d 229 (1999)).

      The Vandenburg Court added that in determining whether there is "fairness and sound public policy," "courts consider the judicial nature of the prior forum, i.e. its legal formality, the scope if its jurisdiction, and its procedural safeguards, particularly including the opportunity for judicial review of adverse rulings." Vandenburg, 21 Cal. 4th at 829; *see also* Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 828 (B.A.P. 9th Cir. 2006), *aff'd.*, 506 F.3d 956 (9th Cir. 2007). Thus courts considering whether an arbitration award should be preclusive look at whether the arbitration was "adjudicatory in nature." Kelly v. Vons Cos., 67 Cal. App. 4th 1329, 1336, 79 Cal. Rptr. 2d 763 (Cal. Ct. App. 2nd Dist. 1998); Jacobs v. CBS Broad., Inc., 291 F.3d 1173, 1177-79 (9th Cir. 2002). The arbitration proceedings must be adjudicatory in nature even when the award was confirmed by the state court. Kaligh, 338 B.R. at 829 (applying Restatement (Second) of Judgments §83). The arbitration should provide parties "the opportunity for a hearing before an impartial and qualified officer, at which they may give formal recorded testimony under oath, cross-examine and compel the testimony of witnesses, and obtain a written statement of decision." Kelly, 79 Cal. Rptr. 2d at 767.

The arbitration proceeding was conducted by a (presumably impartial) retired judge, the parties were represented by counsel, submitted pre-arbitration briefs and presented oral argument, exhibits and testimony by witnesses. *See* Award p. 2. The arbitrator produced the seven-page Award setting forth the bases for his decision to award $1,627,657 to Plaintiff. This arbitration proceeding appears to be adjudicatory in nature and entitled to preclusive effect, although it should be noted that the court does have some discretion in this matter and "reasonable doubts about what was decided in a prior judgment should be decided against applying issue preclusion." Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 108 (B.A.P. 9th Cir. 2007)(relying on Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)).

Debtors argue in the Opposition that this Court should exercise discretion and refrain from applying issue preclusion because the arbitrator was ill or very tired during the proceeding and did not keep detailed notes of the proceeding and because the Award is vague, ambiguous and contradictory. While I do have some discretion, there is nothing before me that justifies refusing to apply the findings in the Judgment and Award. The fact that the arbitrator may have been ill or tired during the arbitration or may not have kept detailed notes during the arbitration proceedings is simply not an issue for this Court. These are issues that should have been raised during the confirmation process in state court or as part of an appeal of the confirmation Judgment. What I have before me is a state court judgment that is entitled to full faith and credit, which precludes relitigation of the findings made in the confirmed Award. The fact that Debtors think that this Court might reach a better (and different) decision is irrelevant.

> [Defendant] argues that . . . the bankruptcy court should have refrained from applying collateral estoppel because the state court's analysis offended "fundamental principles of corporate law." We reject this argument. The bankruptcy court's role was not to evaluate the state court's decision, but merely

to determine whether Samuels was precluded from relitigating an issue that had already been determined. Moreover, there is no indication that it is within a bankruptcy court's discretion to decline to apply collateral estoppel simply because the state court's analysis was lacking. *See, e.g.,* In re Diamond, 285 F.3d 822, 826 (9th Cir. 2002). While certain public policies may limit applicability of collateral estoppel in California, the flawed nature of the prior decision is not one of them. Lucido v. Superior Court, 51 Cal. 3d 335, 272 Cal. Rptr. 767, 795 P.2d 1223, 1226-27 (Cal. 1990).

Samuels v. CMW Joint Venture (In re Samuels), 273 Fed. Appx. 691, 693-694 (9th Cir. Cal. 2008).

**Does the Award preclude issues under §523(a)(4) and (a)(6)?**

The Award can support a grant of summary judgment if the required elements for nondischargeability under §523(a)(4)&(a)(6) were at issue and actually litigated in the arbitration proceeding and the Award necessarily decided these issues.

The Award

The Award first sets forth the relationship of the parties and describes the oral partnership agreement. It then goes on to describe the wrongful acts of the "defendants" (who are Debtors, their son and certain affiliated corporations) after the partnership broke up.

> However, in April, 2005, the partnership between them broke up. The evidence presented was uncontroverted that in April, 2005, defendant Donald Davies informed plaintiff Herbert that he could no longer afford a partner, and that he closed the partnership monetary accounts between April 13 through April 15, 2005, and transferred the partnership funds into bank accounts only he could access. Thereafter, plaintiff Herbert sent a letter to defendant Donald Davies indicating that he resigned from the partnership **. . . .**

The Award notes that the Plaintiff's complaint asserted over 20 causes of action, but that the arbitrator directed his attention to only five: "(1) conversion: (2) breach of oral agreement; (3) breach of fiduciary duty; (4) intentional fraud and deceit; and (5) fraudulent transfer." The Arbitrator then turned to what the evidence had established.

> The evidence presented that the oral agreement between defendant Donald Davies and plaintiff Herbert provided that both would share the profits and losses of their real estate transactions. The evidence presented that in lieu of adhering to the Uniform Partnership Act, defendant Donald Davies formed new Corporate entities that he funded with partnership assets and took over the partnership telephone number which had been used by both partners for several years and had been included on hundreds and thousands of mailers to potential clients. Under the Uniform Partnership Act, a disassociated partner is entitled to a buy-out of his or her interest in the partnership at the time of disassociation. The Act also requires that a disassociated partner is owed [sic] from the date of disassociation to the date of payment. In this litigation, the evidence presented also established that rather than providing Herbert's fifty percent interest in the partnership assets as required by the Uniform Partnership Act [sic]. The UPA act also requires that the associated partner is owed interest from the date of disassociation to the date of payment. In this case defendant Donald Davies retained all the partnership assets and opened bank accounts that only defendant Donald Davies could access.
>
> The evidence presented in this proceeding established that the partnership monetary assets were substantial, and furthermore that several of defendant Donald Davies son and wife [sic] received significant sums from the partnership's monetary assets as did several of defendant Donald Davies' employees and friends.

The arbitrator then made the following findings:

> I find that defendant Donald Davies violated the relevant provisions of the Uniform Partnership Act (aka California Corporation Code Section 16701). In this Arbitration credible evidence was presented by plaintiff that after defendant Donald Davies forced plaintiff Herbert out of the partnership, Donald Davies continued to use partnership assets for the purpose of selling real properties and for the purpose of using some of the partnership assets for his spouse, Pamela Davies and Derek Davies. The evidence also established that both Pamela Davies and Derek Davies were aware of the source of the significant funds received by both the spouse and son of Donald Davies. Accordingly, I further find that defendant Donald Davies' conduct in providing partnership assets to his spouse and son, along with his other uses for his purposes of partnership assets constituted the cause of action of "conversion", and causes of action of breach of contract, intentional fraud and deceit and fraudulent transfer. I also find that defendant Pamela Davies, having received six figure partnership assets knowingly aware of the source of the partnership assets, and using such assets, constitutes the cause of action of 'conversion.'

The remainder of the Award then discusses the expert testimony of Plaintiff's forensic accountant, which was relied on by the Judge in reaching the total amount of the award against Debtors. The Award is based on the sum of $995,978 (50% of the

partnership net assets, which would be owing to Plaintiff when he disassociated himself from the partnership, pursuant to Cal. Corp. Code §16701) plus interest thereon of $449,179 and $150,000 (50% of partnership funds used by Mr. Davies to purchase homes in Nevada) plus interest thereon of $32,500.  (Although the Award states that a breach of fiduciary duty cause of action would be discussed (See Award at p. 3, ll. 14-17), the arbitrator did not make findings supporting a breach of fiduciary duty or any findings at all with respect to that cause of action.)

<u>Herbert Davies: §523(a)(4)</u>

Plaintiff's §523(a)(4) claim seeks a determination that the arbitration award was "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." The Ninth Circuit has determined that California law makes all partners trustees over the assets of the partnership and accordingly held that California partners are fiduciaries within the meaning of §523(a)(4).  <u>Ragsdale v. Haller</u>, 780 F.2d 794, 796-797 (9th Cir. 1986).   So Mr. Davies was acting in a fiduciary capacity when he used and transferred partnership assets.  Whether Mr. Davies committed defalcation of those funds must be determined in light of the recent Supreme court decision, <u>Bullock v. BankChampaign</u>, 2013 U.S. LEXIS 3521 (U.S. May 13, 2013).  In <u>Bullock</u>, the Supreme Court held that defalcation "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." <u>Id.</u> at 5.  More specifically, the Court required:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the

> equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."

Id. at 12-13 (citations omitted). Conversion under California law requires only "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the plaintiff; and (3) damages." Kasdan, Simonds, McIntyre, Epstein & Martin v. World Sav. & Loan Ass'n (In re Emery), 317 F.3d 1064, 1069 (9th Cir. Cal. 2003). Thus, the Award's finding that Donald Davis' use of partnership assets constituted conversion did not necessarily decide that Donald Davis committed defalcation while acting in a fiduciary capacity. The question is whether Mr. Davies knew or "consciously disregarded" a substantial and unjustifiable risk that his use of partnership assets would violate his fiduciary duties. This level of intent is not clearly found in the Award and ambiguities should be resolved against issue preclusion. Defendant has offered evidence of why he believed his use of partnership property was proper. See Declaration of Donald K. Davies in support of the Opposition ¶¶ 14-25. Thus, whether Mr. Davies knew or consciously disregarded a substantial and unjustifiable risk that his use of partnership assets would violate his fiduciary duties remains a triable issue of fact.

(Although the Award concluded that Mr. Davies' use of partnership assets constitutes the "cause of action" of "intentional fraud and deceit", the arbitrator makes no specific findings on the five required elements of fraud: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting

-10-

damage." 5 Witkin Sum. Cal. Law Torts 10th Ed. §772.  As the Award describes neither misrepresentations/concealment by Mr. Davies nor reliance by Plaintiff, fraud seems inapplicable to this matter.)

I can grant partial summary adjudication on all other issues under §523(a)(4): that Mr. Davies, acting as a fiduciary, wrongfully transferred away $995,978 and $150,000 of Plaintiff's share of partnership assets and that with interest his obligation to Plaintiff on account of this wrongful transfer was $1,627,657 as of 1/1/10, with interest accruing at the rate of 10% per annum thereafter.

Herbert Davies: §523(a)(6)

Plaintiff's §523(a)(6) claim is for" willful and malicious injury."  The requirements of "willful" and "malicious" are considered separately. Carrillo v. Su (In re Su), 290 F.3d 1140, 1146 (9th Cir. 2002).

"A 'willful' injury is a 'deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury.'" Albarran v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008)(quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original)).  At a minimum, willful requires "a deliberate act with knowledge that the act is substantially certain to cause injury." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001).  While the Award certainly finds that Mr. Davies deliberately exercised control over partnership assets, there is not a finding that he intended to or was substantially certain that injury to Plaintiff would result.  Debtor has presented evidence that he believed the partnership had a negative asset value and that he intended to, and ultimately did, pay all partnership liabilities.  Davies Dec. ¶¶ 23, 25. If these facts are established at trial, Mr. Davies would not have been substantially certain that his use of assets would cause injury to Plaintiff.  Mr. Davies' intent to injure

remains a triable issue of fact.

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause." Ormsby v. First Am. Title Co. (In re Ormsby), 591 F.3d 1199, 1207 (9th Cir. Cal. 2010). The Award finds that Donald Davies forced Herbert out of the partnership, then used partnership assets for his own purposes and for those of his spouse, and accordingly finds Debtor's liable for conversion. "The conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury within the meaning of §523(a)(6)." Petralia v. Jercich, 238 F.3d at 1208 (quoting Del Bino v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir. 1999)). While a lack of justification might be implicit in the arbitrator's findings, it is not clear from the Award and ambiguities must be resolved against preclusion. Furthermore, while the Award found that Mr. Davies acts caused harm to Plaintiff, it did not find that these acts would "necessarily" cause harm. On the other hand and as noted above, Mr. Davies has presented evidence of justifications for his use of partnership assets, including why his use of assets would not necessarily cause harm to plaintiff.

Thus, I can grant partial summary adjudication on the following elements of §523(a)(6): that Mr. Davies deliberately and intentionally transferred away partnership property, that this transfer was wrongful, that this transfer injured Plaintiff by depriving him of $995,978 and $150,000 of his share of partnership assets and that with interest Mr. Davies' obligation to Plaintiff on account of this injury was $1,627,657 as of 1/1/10, with interest accruing at the rate of 10% per annum thereafter. The following issues of intent must be determined at trial: whether Mr. Davies intended injury to Plaintiff or was

substantially certain that injury would result, whether Mr. Davies' conversion was without justification and whether Mr. Davies acts *necessarily* harmed Plaintiff.

Pamela Davies: §523(a)(6)

Whether Pamela's receipt and use of converted funds constitutes a "willful and malicious injury" under §523(a)(6) is a separate question. Not every act of conversion is "willful and malicious." Halstead v. Bilter (In re Bilter), 413 B.R. 290, 303 (Bankr. E.D. Va. 2009) (quoting Davis v. Aetna Acceptance Co., 293 U.S. 328, 332 (1934)). Receipt and use of converted funds has been held to satisfy the requirements of "willful and malicious injury," only if the recipient had knowledge of the converted nature of funds:

> Here the record demonstrates that Theresa knew that the excess funds in the joint accounts were stolen. She nonetheless wrote checks on these funds. Her intent was to convert the embezzled money to her own (and to Paul's) use, thereby permanently depriving the true owners (Haemonetics and Nova) of their money. Her conduct clearly satisfies [Kawaauhau v. Geiger, 523 U.S. 57], and hence the appellants' claims against her are not dischargeable.

Haemonetics Corp. v. Dupre, 238 B.R. 224, 230 (D. Mass. 1999); *see also* Bryant v. Lynch (In re Tilley), 286 B.R. 782 (Bankr. D. Colo. 2002)(use of converted funds not "willful and malicious" if no evidence of knowledge of converted nature of funds); Hernandez v. Musgrave (In re Musgrave), 2011 Bankr. LEXIS 282 at 23-25 (B.A.P. 10th Cir. Feb. 2, 2011)(same).

The arbitrator found: "Pamela Davies, having received the six figure partnership assets knowingly aware of the source of the partnership assets, and using such assets . . . ." Award at 4. Thus, while the Award clearly found that Mrs. Davies was aware that the funds came from the partnership, it did not clearly find that she was aware of the converted nature of these funds. The second reference to "knowingly aware" is similarly ambiguous:

> I also find that defendant Pamela Davies, having received six figure partnership

-13-

assets knowingly aware of the source of the partnership assets, and using such assets, constitutes the cause of action of 'conversion.'

Id. This sentence also raises a further difficulty with the award vis-à-vis Mrs. Davies – if she received "six figures," why is she liable for the full Award of over $1 million principal in damages? (Finally, the Award's more general statement in conclusion (on p. 6) that all of the defendants "engaged in conversion, intentional fraud and receipt, and fraudulent transfer" is inconsistent with the more specific findings quoted above, and I apply the more specific findings in issue preclusion.)

Mindful that ambiguities should be resolved against issue preclusion, I can grant partial summary adjudication on the issue that she received and used converted partnership property, but whether Mrs. Davies was aware of the converted nature of the funds she used and the amount of converted partnership funds she received must be established at trial.

**Community Property**

Plaintiff also seeks judgment that the debt be declared non-dischargeable as to the Davies' community property, pursuant to Bankruptcy Code §524.

> Normally, the discharge causes community property acquired post-petition to be free from pre-petition community claims. Code § 524(a)(3). But, if . . . the community debt is excepted from discharge under § 523 . . . , the discharge does not immunize such post-petition community property from the community debt. This happens automatically by operation of Code §§ 524(a)(3) and (b), without the necessity for any determination as to the knowledge or participation of the "innocent" spouse, so long as the debt is community debt. In part, this is because the entry of a nondischargeability order does not transform a community debt into a separate obligation owing by only the wrongdoing spouse.

Arcadia Farms Ltd. v. Rollinson (In re Rollinson), 322 B.R. 879 (Bankr. D. Ariz. 2005)(citations omitted). Whether a claim is a "community claim" is purely a question of state law. F.D.I.C. v. Soderling (In re Soderling), 998 F.2d 730, 733 (9th Cir. 1993).

California law provides that:

> Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt.

Cal. Fam. Code § 910.  Thus, any of Mr. Davies' obligations to Plaintiff determined to be nondischargeable, would also be nondischargeable against post-petition community property.

Ruling:

For the reasons stated above, partial summary adjudication is GRANTED on the following issues:

1. Under §523(a)(4), that Mr. Davies, while acting as a fiduciary as to partnership assets, wrongfully transferred away $995,978 and $150,000 of Plaintiff's share of partnership assets and that with interest his resulting obligation to Plaintiff was $1,627,657 as of 1/1/10, with interest accruing at the rate of 10% per annum thereafter.

2. Under §523(a)(6), that Mr. Davies deliberately and intentionally transferred partnership property, that such transfer was wrongful and that such transfer injured Plaintiff by depriving him of $995,978 and $150,000 of his share of partnership assets and that with interest Mr. Davies' obligation to Plaintiff on account of this injury was $1,627,657 as of 1/1/10, with interest accruing at the rate of 10% per annum thereafter.

3. Under §523(a)(6), that Mrs. Davies received and used at least $100,000 of partnership property that had been wrongfully transferred away from the

partnership.

Summary adjudication is DENIED on all other issues, including:

1. Under §523(a)(4), whether Mr. Davies knew or "consciously disregarded" a "substantial and unjustifiable risk" that his use of partnership assets would violate his fiduciary duties.
2. Under §523(a)(6), whether Mr. Davies intended injury to Plaintiff or was substantially certain that injury would result, whether Mr. Davies' conversion was without justification and whether Mr. Davies acts *necessarily* harmed Plaintiff.
3. Under §523(a)(6), whether Mrs. Davies was aware of the converted nature of the partnership funds she received and used and the amount of converted partnership funds she received and used.

Given the Award and Judgment, Defendants will have the burden of proof on these issues at trial. The issues of intent with respect to Mr. Davies will require evidence of, among other things, what Mr. Davies did with the partnership assets that he used, what portion, if any, of the partnership assets he believed he was entitled to take for his own use, whether he believed sufficient funds were left in the partnership to cover Plaintiff's 50% share of net assets, and to what extent Mr. Davies intended to cover and actually covered any shortfall in partnership assets.

###

Date: May 31, 2013

Geraldine Mund
United States Bankruptcy Judge

-17-

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled: MEMORANDUM OF OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION (Docket #23) was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order.  As of May 30, 2013, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

Raymond H Aver     ray@averlaw.com
David R Hagen (TR)     drh@forbankruptcy.com, dhagen@ecf.epiqsystems.com
Allan Herzlich     allan@herzlich-blum.com
United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Jerome J Blum
Allan Herzlich
Herzlich & Blum LLP
15760 Ventura Blvd Ste 2024
Encino, CA 91436-3095

☐ Service information continued on attached page

**3. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers, and/or email addresses stated below:

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    F 9021-1.1.NOTICE.ENTERED.ORDER

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9021-1.1.NOTICE.ENTERED.ORDER**